**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSHUA FROST,**

    **Plaintiff,**

  v.

                Civil Action 2:20-cv-253
                Judge Edmund A. Sargus, Jr.
                Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Joshua Frost, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 6), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 5). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff filed his application for SSI on February 9, 2017, alleging that he had been disabled since January 1, 2012. (R. at 758-66.) Plaintiff's application was denied initially and upon reconsideration. (R. at 683-87.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 694-96.) Administrative Law Judge ("ALJ") Nathan Brown held a hearing on March 8, 2019, at which Plaintiff, who was represented by counsel, appeared

1

and testified. (R. at 201-30.) On April 19, 2019, ALJ Brown issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 179-200.) On November 15, 2019, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision. (R. at 1-7.) Plaintiff then timely commenced the instant action.

## II. PLAINTIFF'S FUNCTIONAL REPORT AND HEARING TESTIMONY

Plaintiff submitted a function report to the administration in March 2017, in which he indicated that his daily activities included cooking, reading, making art, vacuuming, washing laundry, and shopping at stores. Plaintiff reported that sometimes he neglected bathing or shaving. He attended narcotics anonymous/alcohol anonymous meetings twice a week. Plaintiff also reported problems getting along with family, friends, and neighbors, noting, "for the most part we don't speak." Plaintiff responded that he was "not good at all with authority." Plaintiff further reported he could pay attention for half an hour and was good at following written instructions. (R. at 801–08.)

Plaintiff testified at the administrative hearing on March 8, 2019 that while incarcerated, he earned an Associate's degree in culinary arts and business administration. (R. at 206–07, 220.) Plaintiff testified he was easily agitated and did not like being told what to do "over and over in a non-constructive manner." (R. at 212–13.) He does not like people to judge him. When that happens, he is verbally aggressive. (R. at 213.) He had mood swings due to bipolar disorder, noting "it's like a roller coaster." (*Id.*) Plaintiff denied memory problems, and claimed his memory was "a little too good," noting he has flashbacks of "violent stuff that's happened." (R. at 214.) Plaintiff testified to mild problems with attention and concentration. (R. at 215.) He can read and keep up with television shows. (*Id.*) The ALJ noted Plaintiff was shaking

during the hearing, and Plaintiff testified that he had anxiety. (*Id.*)

Plaintiff believes that his anxiety is based on his time from being incarcerated. (R. at 216.) When he was incarcerated, he was beaten and stabbed and as a result, he does not like enclosed places. (*Id.*) Plaintiff testified that he avoided authority figures. (*Id.*) He testified he has two to three anxiety attacks a day. (*Id.*) He is on Methadone for drug use. Usually he gets his dose in the morning then comes back to the house and goes back to sleep. (R. at 216-17.) Plaintiff testified that he has suicidal thoughts when he gets depressed, or "when I get in a rut." (R. at 218.) When he gets depressed, he feels worthless, helpless and hopeless. (*Id.*) Plaintiff testified that he had not held a full-time job over the past 15 years. (R. at 220.) During this period, Plaintiff sold drugs to support himself when he was not incarcerated. (R. at 221.)

### III. MEDICAL RECORDS AND OPINION

#### A. Hopewell Health Center

Plaintiff sought mental health treatment at Hopewell Health Center in January 2017. (R. at 877-89.) Plaintiff reported that he experienced flashbacks, panic attacks and hallucination due to past traumas and incarceration. (R. at 878.) He also reported that while at Pickaway Correction Institution, he was diagnosed with post-traumatic stress disorder (PTSD), and social anxiety disorder. He has tendencies to have outbursts and has suicidal/homicidal ideation. His last suicidal ideation was three weeks prior. (*Id.*) He had experienced numerous traumatic events and reported that "he self-medicated to get rid of his symptoms, but he doesn't use now." (R. at 879.) He took suboxone through AMC of Columbus to treat drug addiction. (R. at 881.) Sharon Burt, L.I.S.W., the intake social worker noted that Plaintiff was the perpetrator as much as a victim of past traumas. Plaintiff related his treatments and prognosis/factors history as an accomplishment. Ms. Burt noted that Plaintiff has a history of polysubstance abuse, and that he

3

reported that he "has only been sober 5 days in his adult life." (R. at 888.) Plaintiff reported having been in multiple rehabilitation facilities and in and out of prison where he had drug rehabilitation. (*Id.*) He described depression symptoms of appetite disturbance, sad mood, disruptive sleep, being easily irritated, feelings of guilt/worthlessness and poor concentration. (*Id.*) Plaintiff reported having learned breathing techniques for trauma management but said they were not working as well. (*Id.*) Plaintiff reported a history of in-patient psychiatric treatment. (*Id.*) Ms. Burt found that at this point, his social anxiety is seen as an extension of his PTSD, and she noted that Plaintiff's prognosis was poor. (*Id.*) She assessed that Plaintiff suffered from major depressive disorder, PTSD, antisocial personality disorder, and borderline personality disorder. (R. at 877, 889.) Ms. Burt referred Plaintiff for individual counseling and alcohol and drug treatment. (R. at 888.) Plaintiff began counseling with John Casey, L.P.C., in March 2017. (R. at 1359–62, 1364–65.)

Donald Newberry, Ph.D., evaluated Plaintiff on April 3, 2017. (R. at 1007.) He noted Plaintiff's diagnoses of antisocial personality disorder, borderline personality disorder, and PTSD per John Casey, LPC. (*Id.*) Dr. Newbery noted that Plaintiff had been incarcerated, which impacted his job skills. (*Id.*) Dr. Newberry reported that Plaintiff has problems with authority and being told what do to, noting that he becomes aggressive when frustrated or feels slighted. (*Id.*) Dr. Newberry added that Plaintiff does not like crowds of people, and opined that Plaintiff "does not take direction well enough to function effectively at a job" and this is his largest impediment to work. (*Id.*) Plaintiff was not expected to be able to work for at least the next 9 months. (*Id.*)

In May 2017, Christopher Henry, L.S.W., saw Plaintiff at jail for a prescreening prior to release. (R. at 1366–71.) The jail staff requested a pre-screen prior to release because Plaintiff

expressed some suicidal ideation at some point while in jail. Plaintiff explained he was arrested two days earlier on a warrant for theft. (R. at 1368.) Plaintiff admitted that he had used drugs before his arrest. (R. at 1367.) Plaintiff told Mr. Henry that he was living with family and was not suicidal. (R. at 1369.)

Plaintiff saw Mr. Casey for counseling again in September 2017. (R. at 1372–77.) Mr. Casey challenged Plaintiff to discuss whether occasional marijuana use was keeping alive his need to be high, which could lead to use of harder drugs, and Mr. Casey also reinforced Plaintiff's attendance at AA meetings. (R. at 1376.) They discussed what Plaintiff did not like about the meetings and he was encouraged to attend more. (*Id.*)

In June 2018, Plaintiff saw Mr. Henry for a prescreening before discharge from jail. (R. at 1385-88.) The jail staff requested a pre-screen prior to release because Plaintiff expressed some suicidal ideation. (*Id.*) Plaintiff had been arrested the previous night on an outstanding warrant. (*Id.*) Plaintiff admitted recent substance abuse, and his diagnoses included opioid dependence with withdrawal. (*Id.*) Plaintiff told Mr. Henry that he wanted to get out of jail before he went into withdrawal from heroin. (*Id.*) Also in June 2018, Plaintiff returned to Hopewell to seek a referral for inpatient substance-abuse services and reported an accidental overdose earlier that day. (R. at 1390-94.)

      **B.**    **Mount Carmel West Hospital**

On October 23, 2017, paramedics brought Plaintiff to the emergency department after he was found unresponsive outside his apartment. (R. at 1016–47.) When Plaintiff awoke, he reported relapsing on heroin. (R. at 1018.) He was going to leave against medical advice, but was pink slipped due to suicidal ideation. (R. at 1021.) During a consultation with a nurse practitioner the next day, Plaintiff was aggressive and manipulative. (R. at 1021–22.) The nurse

5

practitioner noted Plaintiff was oriented, with an anxious and constricted affect, angry mood, and normal memory, attention, and concentration. (R. at 1023.) He had poor judgment and insight. (Id.) Plaintiff was diagnosed with substance-induced mood disorder or mood disorder. He was discharged on October 26, 2017. (R. at 1016.)

      C.     **Integrated Services for Behavioral Health**

Plaintiff presented to Integrated Services for Behavioral Health for mental health services in November 2018. (R. at 1056–66.) Plaintiff told Amanda Pack, the intake nurse practitioner, that "I left Hopewell and I needed counseling." (R. at 1056.) Plaintiff reported symptoms of bipolar disorder, PTSD, and obsessive-compulsive disorder, and he claimed he "got clean recently" and was on methadone. (*Id.*) Plaintiff also reported that he was experiencing decreased energy and sleep, had a low mood, psychomotor slowing, was fearful, experiencing grandiosity, increased anxiety and excessive worrying. (R. at 1059.) On mental status examination, Ms. Pack observed that Plaintiff was restless with fair insight and judgment, hopeless thoughts and normal speech, memory, attention, and concentration. (R. at 1061.) Ms. Pack assessed bipolar disorder, anxiety, and PTSD, and prescribed an antipsychotic drug. (R. at 1063.)

In January 2019, Plaintiff told Ms. Pack he was doing better with fewer symptoms of depression. (R. at 1067.) On mental status examination, Plaintiff exhibited a euthymic mood, a full affect, good insight and judgment, and normal memory, attention, and concentration. (R. at 1073.) When seen in February 2019, Plaintiff told Ms. Pack that his depression was "not bad, not great." (R. at 1078.) He reported having panic attacks on the bus or at the grocery store, but stated he hadn't been having flashbacks. (*Id.*) On mental status examination, Plaintiff exhibited a euthymic mood, flat affect, fair insight and judgment, and normal memory, attention, and

concentration. (R. at 1084.) Ms. Pack increased Plaintiff's dosage of antipsychotic medication. (R. at 1085.)

### D. Gary Sarver, Ph.D., consultative examiner

Dr. Sarver evaluated Plaintiff on April 4, 2017, for disability purposes. (R. at 1008–15.) Plaintiff reported that he could not work because, "I don't do authority figures." (R. at 1009.) He reported living with his mother and said the arrangement is "not very good." (*Id.*) Dr. Sarver noted that Plaintiff's independent living skills are adequate, although he states he depends on his mother, and noted that Plaintiff quit school in the ninth grade to sell drugs and had spent 11 years in prison. (R. at 1011.) Plaintiff denied current abuse of alcohol or marijuana, admitted to prior cocaine abuse and heroin abuse, and stated that he had not used cocaine in four months, and he had not used heroin in ten months. (*Id.*)

Plaintiff reported that he was in a prison gang and others were afraid of him. (R. at 1013.) He also stated he had seven girlfriends in the past, but relationships ended because, "I'm rude and obnoxious." (R. at 1010.) Plaintiff reported a pattern of difficulty interacting with others. (R. at 1012.) He said he usually quit jobs because "I don't take orders well." (R. at 1011.) Plaintiff also reported weight loss, difficulty sleeping, no energy, depression, worrying, anger at everyone, and crying daily. (R. at 1012.) When discussing his activities of daily living, Plaintiff reported that he does cooking, dishes, and reading. (*Id.*) He depends on his mother to do laundry, shopping, and bill paying. (*Id.*) Dr. Sarver found Plaintiff to be "a dramatic and histrionic individual who was intent on presenting himself as an angry and violent person." (*Id.*)

On mental status examination, Dr. Sarver noted that Plaintiff had normal speech and a belligerent mood. (R. at 1012.) He did not observe any significant indications of flashbacks, intense anxiety, or panic attacks. (R. at 1012-13.) Plaintiff did not have any particular

difficulties in terms of cognitive function, attention, or persistence; he could recall his personal history, follow instructions appropriately, and deal with simple and complex job tasks. (R. at 1013.) Plaintiff had functionally intact short-term memory and attention, with poor insight and judgment and low-average abstract reasoning and judgment. (R. at 1013–14.) Dr. Sarver assessed antisocial personality disorder; opiate-use disorder, mild, in early remission; and persistent depressive disorder, mild, with anxious distress. (R. at 1014.) Dr. Sarver opined that even though Plaintiff did not have difficulty understanding, remembering, and carrying out simple and complex job instructions in the past, his personality disorder and instability could "periodically attenuate these capacities." (R. at 1015.) Dr. Sarver found that Plaintiff had no particular difficulties with cognitive function, pace, and persistence. (*Id.*) Dr. Sarver also opined that Plaintiff has fairly consistent difficulty reliably dealing with normative work stressors and his personality disorder and poor coping skills make it difficult for him to sustain even short-term employment. (*Id.*)

      E.      **State Agency Review**

In April 2017, Tonnie Hoyle, Psy.D., reviewed Plaintiff's record and assessed his mental condition. (R. at 648–62.) Dr. Hoyle based her review on the criteria for the listings of depressive, bipolar, and related disorders and personality and impulse control disorders. (R. at 654.) Dr. Hoyle concluded that Plaintiff's mental impairments caused mild limitations in understanding, remembering, or applying information and moderate limitations in interacting with others, concentration, persist or maintaining pace and adapting or managing oneself. (*Id.*) Dr. Hoyle opined that Plaintiff had sufficient concentration, attention, persistence, and pace for simple, routine, low-stress work with low social interaction and no strict time or production demand. (R. at 658.) Dr. Hoyle opined that Plaintiff could not interact with the public but could

8

have occasional and superficial interactions with coworkers and supervisors. (R. at 659.) Dr. Hoyle opined that Plaintiff could adapt to infrequent changes that were explained in advance. (*Id.*) In September 2017, Sandra Banks, Ph.D. reviewed Plaintiff's mental health record on reconsideration and affirmed Dr. Hoyle's assessment. (R. at 670–76.)

### IV. ADMINISTRATIVE DECISION

On April 19, 2019, ALJ Brown issued his decision. (R. at 176-200.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since January 10, 2017, the application date. (R. at 182.) The ALJ found that Plaintiff had the severe impairments of obesity, depressive disorder, posttraumatic stress disorder, antisocial personality disorder, borderline personality disorder, derangement of the right knee status post-surgical intervention, right ulnar neuropathy and hepatitis. (*Id.*) He further found that Plaintiff's impairment of anti-social personality disorder/borderline personality disorder including the substance use disorder, meet section 12.08 of 20 C.F.R. Part 404, Subpart

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

P, Appendix 1. (R. at 183.) The ALJ next found that if the Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on the Plaintiff's ability to perform basic work activities. (R. at 184.) Therefore, the Plaintiff would continue to have a severe impairment or combination of impairments. (R. at 185.) The ALJ also found that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 186.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity (RFC) as follows:

> If the [Plaintiff] stopped the substance use, the [Plaintiff] would have the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can perform lifting and carrying of 20 pounds occasionally and ten pounds frequently. He can sit for six hours, stand for six hours, and walk for six hours. He can push and or pull as much as he can lift and or carry. He can operate foot controls with the right foot frequently. He can operate hand controls with the right hand frequently. He can handle items frequently with the right hand. He has fingering limitations frequently with the right hand. The [Plaintiff] can climb ramps and stairs occasionally. He can never climb ladders, ropes, or scaffolds. He can balance occasionally, stoop occasionally, and kneel occasionally, crouch occasionally, and never crawl. The [Plaintiff] can work at unprotected heights occasionally, with moving mechanical parts occasionally, and in vibration frequently. He must be exposed to a low-stress work environment defined as no fast-paced production requirements or strict time quotas, and no over-the-shoulder supervision. He can have occasional changes in a routine work setting, occasional decision-making required, and no supervisory responsibilities. He is able to interact with supervisors and coworkers occasionally. He is able to interact with the public never, except incidentally.

(R. at 188.)

In making the above determination, the ALJ gave significant weight to Dr. Hoyle's and Dr. Banks' State agency opinions. (R. at 192.) He assigned little weight to Dr. Sarver's conclusions about Plaintiff's functional abilities as well as to Dr. Newberry's April 2017 letter

indicating that Plaintiff did not take direction well enough to function effectively at a job. (R. at 193.)

Relying on the VE's testimony, the ALJ found that if Plaintiff stopped the substance use, he could perform jobs that exist in significant numbers in the national economy. (R. at 194.) He therefore concluded that Plaintiff's substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Accordingly, the ALJ found that Plaintiff had not been disabled at any time from the date the application was filed through the date of this decision. (R. at 195.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In his Statement of Errors, Plaintiff contends that the ALJ failed to prove that Plaintiff's substance abuse was material to a finding of disability. (EFC No. 6). Specifically, Plaintiff argues that "the ALJ has failed to provide sufficient evidence that would demonstrate to a subsequent reviewer how [Plaintiff's] substance abuse was a contributing factor material to his disability." (ECF No. 6 at PAGEID # 1541.) Plaintiff argues "the ALJ does little more than merely conclude that [Plaintiff's] substance abuse was a contributing material factor to his disability determination," and that the ALJ just stated that Plaintiff's substance abuse "permeates the file" without offering any sort of explanation. (*Id.* at PAGEID ## 1541-1542.) Plaintiff acknowledges that the ALJ cited Plaintiff's October 2017 overdose in support, but argues that "[t]his single instance surely does not demonstrate that [Plaintiff's] substance abuse permeated throughout the record." (*Id.* at PAGEID # 1542.) Plaintiff also argues that the ALJ does not rely on any of the opinion evidence in the record, and suggests that "[i]f [Plaintiff's] substance abuse were a material contributing factor, surely one of the several medical professionals in the record would have discussed the relevance of the issue." (*Id.* at PAGEID # 1544.)

In response, the Commissioner maintains that the ALJ "properly considered Plaintiff's

functional abilities in the absence of substance abuse," and that because "Plaintiff would be able to work if he stopped abusing substances, substance abuse was material and Plaintiff was not eligible for benefits." (ECF No. 11 at PAGEID # 1555.) The Commissioner argues that Plaintiff inverts the burden of proof, which remains on Plaintiff throughout the materiality analysis, and stresses that the ALJ "properly analyzed [Plaintiff's] substance abuse and identified substantial evidence in support of his findings." (*Id.* at PAGEID # 1563.) Specifically, in addition to the October 2017 overdose, the Commissioner also cites multiple instances in which Plaintiff reported substance abuse use or tested positive for substances in throughout 2017 and 2018. (*Id.* at PAGEID # 1565.) Accordingly, the Commissioner maintains that "Plaintiff's substance abuse was well documented throughout the relevant period." (*Id.*) The Commissioner thus argues that the ALJ appropriately considered medical record and opinion evidence, including examinations from when Plaintiff was and was not abusing substances, to determine that Plaintiff's substance use was a contributing factor material to the disability finding. (*Id.* at PAGEID ## 1567-1572.) The Commissioner argues that "[t]o assess Plaintiff's RFC absent substance abuse, the ALJ relied on substantial evidence," and that "Plaintiff fails to show that no reasonable mind would accept this evidence as adequate to support the ALJ's RFC finding." (*Id.* at PAGEID # 1572.)

  Under Social Security law, a claimant is not considered disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 380 (6th Cir.2013). The key factor in determining whether drug or alcohol abuse is material is whether the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(a), 416.935(a); Soc. Sec. Rul. 13–2P, 2013 WL 621536 at *7 (Soc. Sec. Admin. Feb. 20, 2013). If the ALJ determines that a claimant would still be disabled if the

13

substance abuse stopped, the ALJ must conclude that the substance abuse is not a contributing factor material to the determination of disability and should award benefits. *Blaylock v. Comm'r of Soc. Sec.,* 947 F.Supp.2d 826, 839 (N.D. Ohio 2013) (citing 20 C.F.R. §§ 404.1535(b)(2)(ii) and 416.935(b)(2)(ii)). If the ALJ finds that the claimant would not be disabled if the substance abuse stopped, the ALJ must conclude that the substance abuse is a contributing factor material to the determination of disability and should not award benefits. *Id.* (citing 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i)).

The claimant bears the burden of proving that substance abuse is not a contributing factor material to his or her disability, that is, that the claimant would still be disabled in the absence of substance abuse. *Haning v. Calvin*, No. 2:14-CV-573, 2015 WL 4593414, at *2 (S.D. Ohio July 30, 2015) (citing *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 123 (2d Cir. 2012); *Parra v. Astrue,* 481 F.3d 742, 748 (9th Cir. 2007); *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003); Soc. Sec. Rul. 13–2P, 2013 WL 621536 at *4)).

Against this backdrop, Plaintiff has failed to meet his burden. First, the Undersigned disagrees with Plaintiff's statements that "the ALJ [only] referred to a single instance in the record where Mr. Frost had overdosed" to demonstrate that Plaintiff's substance abuse "permeated" the record, or that "the record demonstrates that [Plaintiff] was actually not abusing opiates or other substances" during the relevant period. (ECF No. 6 at PAGEID ## 1542-1543.) Rather, as the Commissioner correctly observes, the record in fact confirms that Plaintiff continued to abuse opiates and other illicit substances during the relevant period and substantial evidence supports the ALJ's conclusion in this regard:[2]

---

[2] Plaintiff filed his application for SSI on February 9, 2017, alleging that he had been disabled since January 1, 2012. (R. at 758-66.)

14

- January 9, 2017 (R. at 1344-1356):  Plaintiff reported that he most recently used marijuana "[a] month ago"; that he most recently used cocaine "[a] month and a week ago"; that he most recently used amphetamine "[a] months [sic] ago"; that he most recently used opiates on December 21, 2015; that he most recently used K2, bath salts, and spice in July 2015; that he most recently used methamphetamine "[a]bout 5 weeks ago"; and that "he has only been sober 5 days in his adult life."
- May 10, 2017 (R. at 1367):  Plaintiff reported that he used heroin, cocaine, marijuana, and benzodiazepine "2 days ago."
- September 26, 2017 (R. at 1376):  Plaintiff reported occasional marijuana use.
- October 1, 2017 (R. at 1378-1381):  Plaintiff was brought to the Emergency Department in a drug-induced hallucinatory state, and lab tests reported "several non-RX drugs in his system, [including] cocaine, benzos, pot and more."
- October 23, 2017 (R. at 1018):  Following another hospitalization, a toxicology screen for Plaintiff was positive for amphetamines, benzodiazepines, cocaine, and opiates.
- June 5, 2018 (R. at 1385-1388):  Plaintiff reported that he recently had used heroin, and "that he is addicted to heroin and that he will be going into withdrawal soon."

While Plaintiff may take issue with the ALJ's characterization that Plaintiff's substance abuse "permeates the file," that issue of semantics does not change the fact that the record does show, convincingly, that Plaintiff continued to abuse opiates and other illicit substances during the relevant period.  His substance abuse indeed permeates the file.

The Undersigned also disagrees with Plaintiff's statements that "[t]hroughout the ALJ's decision, the ALJ does little more than merely conclude that Mr. Frost's substance abuse was a

contributing material factor to his disability determination." (ECF No. 6 at PAGEID # 1541.) In evaluating whether a claimant's addiction or abuse is a contributing factor material to the disability determination, courts "have allowed an ALJ to look at a claimant's periods of sobriety and compare those periods to times when the claimant was abusing substances, in order to make this evaluation." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 443 (6th Cir. 2011) (citing *Bartley v. Barnhart,* 117 F. App'x 993, 998 (6th Cir.2004) (approving of the ALJ's approach of "look[ing] to periods of sobriety in the record to determine whether [the claimant] suffers from a work-limiting mental illness independent of substance abuse")).

That is what the ALJ did in this case and his decision is amply supported by substantial evidence. The ALJ expressly considered Plaintiff's mental examinations during periods when he was not abusing substances, finding that "the treatment notes of his treating practitioners (absent drug abuse) usually showed that [Plaintiff's] mental status was normal at appointments (except for routine findings, such as depressed mood and affect, which would not be expected to cause significant functional limitation)." (R. at 192.) The ALJ afforded "significant weight" to the State agency consultant opinions,[3] both of which concluded that Plaintiff could perform light work, because the opinions were "generally consistent outside the context of drug usage." (*Id.*) While the State agency opinions did not address Plaintiff's drug and alcohol abuse, the ALJ cited that "the evidence reflects and [Plaintiff] testified he has a long history of getting along with others in interpersonal relationships and in the work place." (R. at 192-193.)

---

[3] Significantly, Plaintiff does not challenge the ALJ's weighing and consideration of the opinion evidence. Rather, Plaintiff simply argues that "the ALJ has failed to demonstrate how the record supports his conclusion." (ECF No. 6 at PAGEID # 1545.) Accordingly, the Court will not analyze the ALJ's weighing of opinion evidence, and instead limits its discussion to whether the ALJ properly demonstrated how the record supports his conclusion.

To that end, the ALJ also properly considered Plaintiff's limited work history, including Plaintiff's substantial time as a drug dealer. *See* 20 C.F.R. § 416.929(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . . . "). Specifically, the ALJ noted that Plaintiff "has never worked consistently in the last 15 years, which raises some questions as to whether the current unemployment is truly the result of medical problems." (R. at 192.) In discussing Plaintiff's functional ability to sell drugs as a source of income, the ALJ noted that "historically, [Plaintiff] has been able to deal with simple as well as complex job tasks and to multitask." (R. at 193.) The ALJ also considered Plaintiff's daily activities, including his ability to make a simple meal for himself, do laundry, vacuum, and shop in a grocery store. (R. at 187.) Considering this substantial evidence, the ALJ concluded that "[i]f [Plaintiff] stopped the substance use, [Plaintiff] would have the residual functional capacity to perform light work." (R. at 188-193.)

Critically, the ALJ found that this evidence was in stark contrast to Plaintiff's functional capacity when he was under the influence of drugs. When the ALJ considered the evidence from when Plaintiff was abusing drugs, the ALJ found that Plaintiff "could not control his money"; had panic attacks two to three times per day, during which he could not understand or remember anything; had flashbacks of violence; did not take direction well; and struggled to remember to take care of his personal hygiene, as he could go a week without shaving or bathing. (R. at 183-184.) Accordingly, the ALJ found that Plaintiff had marked limitations in "understanding, remembering, or applying information" and "adapting or managing [him]self" when he was abusing drugs. (*Id.*) This conclusion was in direct contrast with the State agency consultant opinions which found that when he was not abusing drugs, Plaintiff's "concentration, attention, persistence, and pace are sufficient for simple, routine, low stress, one to three step tasks with

17

low social interaction and no strict time or production demands," that he "can work in environments that do not involve public interaction, and where interaction with coworkers and supervisors is occasional and superficial," and that he "can adapt to infrequent changes that are explained in advance." (R. at 184-185.)

Contrary to Plaintiff's assertion, this is not an instance in which the ALJ lacked substantial evidence sufficient to separate the substance abuse from Plaintiff's mental health impairments. Because Plaintiff had periods of both sobriety and abuse, and the medical records documented his condition during both periods, the ALJ was able to determine that Plaintiff's drug abuse exacerbated his condition. *Monateri*, 436 F. App'x at 443 (6th Cir. 2011). As a result, the ALJ was able to determine that absent this effect on Plaintiff's condition, the depth of his mental health conditions would not prevent him from working in a light duty capacity. Because Plaintiff has failed to meet his burden of showing that no reasonable mind would accept this evidence as adequate to support the ALJ's RFC finding, Plaintiff's objection is not well taken.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits, and that the ALJ properly explained how Plaintiff's substance abuse was a contributing factor material to the ALJ's finding of disability. Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**DATED:  January 13, 2021**	*/s/ Elizabeth A. Preston Deavers*
	**ELIZABETH A. PRESTON DEAVERS**
	**UNITED STATES MAGISTRATE JUDGE**